UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

ELIO CALDERON AGUILAR,

      Petitioner,                        Case No. 1:25-cv-1439

v.                                            Honorable Paul L. Maloney

ANGELA DUNBAR et al.,

      Respondents.
_____/

## **OPINION**

Petitioner Elio Calderon Aguilar initiated this action on September 8, 2025, by filing a counseled petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 in the United States District Court for the Eastern District of Michigan. (Pet., ECF No. 1.) Petitioner is a United States Immigration and Customs Enforcement (ICE) detainee currently detained at the North Lake Processing Center located in Baldwin, Lake County, Michigan.

Petitioner, through counsel, filed an amended § 2241 petition (Am. Pet., ECF No. 10) on September 15, 2025. Respondents filed their response (ECF No. 13) on September 25, 2025, and filed supplemental exhibits (ECF No. 18) to their response on October 29, 2025. Petitioner filed a reply (ECF No. 15) on October 8, 2025. On October 30, 2025, the Eastern District of Michigan conducted a show cause hearing. Subsequently, in an opinion and order (ECF No. 20) entered on November 14, 2025, the Eastern District of Michigan transferred the amended § 2241 petition to this Court for further proceedings.

Petitioner challenges the lawfulness of his current detention and asks the Court for the following relief: to issue a writ of habeas corpus directing Respondents to immediately release Petitioner from custody; alternatively, to order Respondents to provide Petitioner with an

individualized bond hearing before an immigration judge; to retain jurisdiction to ensure compliance with this Court's order; and, to award attorneys' fees and costs for this action. (Am. Pet., ECF No. 10, PageID.54.) The parties have also filed a joint motion for a status conference. (ECF No. 23.) For the following reasons, the Court will deny Petitioner's amended petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 and will deny as moot the parties' joint motion for a status conference.

## Discussion

### I.     Factual Background

Petitioner "is a native and citizen of Honduras who entered the United States at an unknown date, time, and place without being inspected and admitted or paroled by immigration officials." (Pinson Decl. ¶ 4, ECF No. 13-2, PageID.79.) United States Border Patrol (USBP) agents first encountered Petitioner at or near Brownsville, Texas, on or about June 22, 1995. (*Id.* ¶ 5.) USBP agents issued Petitioner a Form I-221, Order to Show Cause, charging Petitioner with inadmissibility pursuant to § 241(a)(1)(B) of the INA "for entering the United States without inspection." (*Id.*) Petitioner was placed into removal proceedings before the immigration court in Harlingen, Texas, where Petitioner filed "an application for asylum and for withholding of removal." (*Id.* ¶ 6, PageID.80.)

On October 13, 1995, Petitioner was released from custody pursuant to a Form I-220A, Order of Release on Recognizance. (*Id.* ¶ 7.) Subsequently, venue for Petitioner's removal proceedings was transferred to the Los Angeles Immigration Court. (*Id.* ¶ 8.) Petitioner appeared before that court on December 5, 1995. (*Id.* ¶ 9.) At that time, Petitioner "withdrew his asylum application and only sought voluntary departure." (*Id.*) The immigration judge concluded that Petitioner was deportable as charged. (*Id.*) The immigration judge granted Petitioner's application for voluntary departure under § 244(e)(1) of the INA and ordered Petitioner to depart the United

2

States on or before January 30, 1996. (*Id.*) Petitioner "failed to voluntarily depart by the specified time, as required, and the order of voluntary departure automatically converted to an order of deportation by operation of law." (*Id.* ¶ 10.) Petitioner was then ordered to report to immigration officials on August 5, 1996, so that his removal order could be executed. (*Id.* ¶ 11, PageID.81.) Petitioner failed to do so. (*Id.*)

On December 14, 2000, immigration officials apprehended Petitioner while he was "attempting to reenter the United States." (*Id.* ¶ 12.) Petitioner "falsely claimed to be a citizen of the United States and provided a false name." (*Id.*) Immigration officials issued Petitioner a Form I-860, Notice and Order of Expedited Removal, and Petitioner was "removed from the United Staes on January 3, 2001[,] via air charter." (*Id.*)

Subsequently, on March 16, 2003, immigration officials encountered Petitioner at the Anaheim, California, jail. (*Id.* ¶ 13.) Petitioner was issued a Form I-862, Notice to Appear, and was placed in removal proceedings in the Lancaster Immigration Court. (*Id.*) Petitioner was charged with removability pursuant to § 212(a)(6)(A)(i) of the INA "for being present in the United States without being inspected and admitted or paroled by immigration officials after entering the United States at or near San Ysidro, California on an unknown date in November 2002." (*Id.*)

On April 2, 2003, an immigration judge ordered that Petitioner be removed. (*Id.* ¶ 14.) Petitioner contends that he was ordered removed in absentia. (Am. Pet., ECF No. 10, PageID.52.) Petitioner reserved his right to appeal, but did not file an appeal to the Board of Immigration Appeals (BIA), thereby rendering his order of removal final. (Pinson Decl. ¶ 14, ECF No. 13-2, PageID.81–82.) Petitioner was removed to Honduras via air charter on June 18, 2003. (*Id.* ¶ 15, PageID.82.)

3

On October 18, 2010, Petitioner was convicted of driving under the influence by the Newport Beach, California, Judicial Court. (*Id.* ¶ 16.) On April 29, 2014, Petitioner was convicted of false identification to a police officer and operating without a license by the Santa Ana, California, Judicial Court. (*Id.* ¶ 17.)

On November 21, 2023, Petitioner filed a Form I-485, Application to Register Permanent Residence, and a Form I-601, Application for Waiver of Grounds of Inadmissibility, "with the United States Citizenship and Immigration Services (USCIS) based upon an approved Form I-130, Petition for Alien Relative, filed by his United States citizen spouse." (*Id.* ¶ 18.)

On May 9, 2023, Petitioner filed a motion to reopen with the immigration court, seeking to adjust his status. (*Id.* ¶ 19.) The immigration court denied that motion on June 26, 2023. (*Id.* ¶ 20.) On May 23, 2025, the USCIS denied Petitioner's applications for relief, concluding that "it did not have jurisdiction to adjudicate the applications because [Petitioner] was ordered removed by an immigration judge." (*Id.* ¶ 21, PageID.83.)

On August 20, 2025, ICE agents encountered Petitioner in Dearborn, Michigan, and issued him a Form I-871, Notice of Intent/Decision to Reinstate Prior Order, with respect to Petitioner's 2003 order of removal. (*Id.* ¶ 22.) Petitioner was taken into custody by ICE and detained at North Lake. (*Id.*) On or about August 25, 2025, while being processed by ICE agents, Petitioner "claimed a fear of returning to Honduras." (*Id.* ¶ 23.)

On October 14, 2025, a USCIS asylum officer interviewed Petitioner and concluded that Petitioner "established a reasonable fear of persecution" if he returned to Honduras. (Supp. Pinson Decl. ¶ 4, ECF No. 18-2, PageID.110.) On or about October 15, 2025, the Detroit Enforcement and Removal Operations (ERO) was notified of the asylum officer's reasonable fear determination. (*Id.* ¶ 5.)

On October 16, 2025, an ICE officer issued Petitioner an NTA charging him with removability pursuant to § 212(a)(9)(C)(i)(II) "for having entered the United States without being admitted after having been previously ordered removed." (*Id.* ¶ 6, PageID.110–11.) That NTA was issued erroneously because Petitioner "was already being processed as a reinstatement pursuant to a final order of removal." (*Id.* ¶ 7, PageID.111.) Instead, Petitioner should have received a Form I-863, Notice of Referral to Immigration Judge, "to place [Petitioner] into withholding-only proceedings in the immigration court to apply for withholding of removal under section 241(b)(3) of the [INA] and protection under the United Nations Convention Against Torture." (*Id.*) Petitioner was scheduled to appear before the Detroit Immigration Court on October 28, 2025. (*Id.* ¶ 8.)

On October 20, 2025, the NTA was uploaded to the Courts and Appeals System used by the Executive Office for Immigration Review (EOIR) to "initiate new removal proceedings in the immigration courts." (*Id.* ¶ 9.) However, "[u]pon information and belief, EOIR did not accept the uploaded NTA into its system until October 28, 2025, thereby commencing removal proceedings in the Detroit Immigration Court. (*Id.* ¶ 11, PageID.112.)

On October 28, 2025, EOIR "issued a hearing notice for a master calendar hearing on November 19, 2025." (*Id.* ¶ 12.) That same day, Agent Pinson was notified that a Form I-863 needed to be prepared to place Petitioner "into withholding-only proceedings in immigration court to allow an immigration judge to adjudicate his fear claim." (*Id.* ¶ 13.) The Form I-863 was prepared on October 29, 2025, and was personally served upon Petitioner at North Lake. (*Id.* ¶ 14.) Also on October 29, 2025, a government attorney representing ICE filed a motion to dismiss proceedings with the Detroit Immigration Court "on the basis that the NTA was improvidently issued because [Petitioner] is subject to reinstatement of his prior removal order." (*Id.* ¶ 15, PageID.112–13.)

On November 5, 2025, the immigration judge granted the motion to dismiss without prejudice. (ECF No. 19, PageID.200–01.) On November 7, 2025, the immigration judge conducted a custody redetermination hearing and denied Petitioner's request for bond, concluding that Petitioner was a flight risk. (*Id.*, PageID.202.) Petitioner reserved his right to appeal that decision to the BIA. (*Id.*, PageID.203.)

As soon as removal proceedings are terminated, ERO intends to file "the executed Form I-863 . . . with the Detroit Immigration Court to initiate withholding-only proceedings under INA § 241 to allow an immigration judge to adjudicate [Petitioner's] fear claim." (Supp. Pinson Decl. ¶ 16, ECF No. 18-2, PageID.113.)

## II.  Habeas Corpus Legal Standard

The Constitution guarantees that the writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). Section 2241 of Title 28 confers the federal courts with the power to issue writs of habeas corpus to persons "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241. This includes challenges by non-citizens in immigration-related matters. *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); *see also A. A. R. P. v. Trump*, 145 S. Ct. 1364, 1367 (2025).

## III.  Merits Discussion

### A.  Statutory Basis for Petitioner's Detention

Petitioner contends that ICE lacks authority to detain him because, according to Petitoiner, there has been no reinstated order of removal nor pending removal proceedings against Petitioner. (Am. Pet., ECF No. 10, ECF No. 53.) Petitioner suggests that ICE has no statutory authority to detain Petitioner. (*Id.*) Respondents, however, counter that Petitioner is lawfully detained pursuant to 8 U.S.C. § 1231. (Resp., ECF No. 13, PageID.69.)

6

A noncitizen who has a prior order of removal reinstated "has no right to a hearing before an immigration judge in such circumstances." *See* 8 C.F.R. § 241.8(a). To determine whether a noncitizen is subject to reinstatement of a prior order of removal, an immigration judge must determine:

> (1) Whether the alien has been subject to a prior order of removal. The immigration officer must obtain the prior order of exclusion, deportation, or removal relating to the alien.
>
> (2) The identity of the alien, i.e., whether the alien is in fact an alien who was previously removed, or who departed voluntarily while under an order of exclusion, deportation, or removal. In disputed cases, verification of identity shall be accomplished by a comparison of fingerprints between those of the previously excluded, deported, or removed alien contained in Service records and those of the subject alien. In the absence of fingerprints in a disputed case the alien shall not be removed pursuant to this paragraph.
>
> (3) Whether the alien unlawfully reentered the United States. In making this determination, the officer shall consider all relevant evidence, including statements made by the alien and any evidence in the alien's possession. The immigration officer shall attempt to verify an alien's claim, if any, that he or she was lawfully admitted, which shall include a check of Service data systems available to the officer.

*Id.*

Notably, a noncitizen who is subject to a reinstated prior order of removal "is not eligible and may not apply for any relief under this chapter." *See* 8 U.S.C. § 1231(a)(5). The only exception to removal after reinstatement of a prior order is if the noncitizen requests withholding of removal "by expressing a fear of returning to the country designated in that order." *See* 8 C.F.R. § 241.8(e). In such a case, the noncitizen "shall be immediately referred to an asylum officer for an interview to determine whether the alien has a reasonable fear of persecution or torture pursuant to § 208.31 of this chapter." *Id.*

As an initial matter, in his reply, Petitioner suggests that he "does not agree with Respondent[s] decision to reinstate his final order of removal." (ECF No. 15, PageID.101.) To the

7

extent Petitioner takes issue with the reinstatement of the final order itself, the Court lacks jurisdiction to consider such a claim, as "a petition for review filed with an appropriate court of appeals in accordance with this section shall be the sole and exclusive means for judicial review of an order of removal." *See* 8 U.S.C. § 1252(a)(5); *see also Villegas de la Paz v. Holder*, 640 F.3d 650, 653 (6th Cir. 2010) (noting that "we treat reinstatement orders precisely as we do removal orders for purposes of our jurisdiction to review them under 8 U.S.C. § 1252(b)"). Thus, the only issue properly before this Court is whether Respondents have authority to detain Petitioner pursuant to the reinstated order of removal.

Petitioner contends that "the reinstatement [of the prior order of removal] itself does not require that Petitioner be detained." (ECF No. 15, PageID.101.) Petitioner avers further that Respondents do not have the right to detain him "while he exercises [his] rights" to seek withholding of removal. (*Id.*) Unfortunately for Petitioner, his argument is undercut by the Supreme Court's recent decision in *Johnson v. Guzman Chavez*, 594 U.S. 523 (2021). In *Guzman Chavez*, the Supreme Court "was asked to decide which of two provisions [8 U.S.C. § 1226 and 8 U.S.C. § 1231] applies to aliens who were removed from the United States but later reentered without authorization, were subject to reinstated orders of removal, and then sought withholding of removal based on fear of persecution in the particular countries designated by their removal orders." *See id.* at 526. The Supreme Court concluded that "§ 1231, not § 1226, governs the detention of aliens subject to reinstated orders of removal, meaning those aliens are not entitled to a bond hearing while they pursue withholding of removal." *Id.*

Thus, pursuant to *Guzman Chavez*, the Court agrees with Respondents that Petitioner is properly detained pursuant to 8 U.S.C. § 1231.

### B.     Fifth Amendment Due Process Considerations

Petitioner contends further that "prolonged detention without a bond hearing is unconstitutional," and that "detention post-order is limited and removal is not reasonably foreseeable because Respondents . . . have taken no steps to effect removal." (Am. Pet., ECF No. 10, PageID.53.) Respondents counter Petitioner's arguments by stating that his detention does not violate the Fifth Amendment because neither § 1231 nor the Constitution "require that he receive a bond hearing during his detention under § 1231." (Resp., ECF No. 13, PageID.74.)

Section 1231 provides that "when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days (in this section referred to as the 'removal period')." *See* 8 U.S.C. § 1231(a)(1)(A). "During the removal period, the Attorney General shall detain the alien." *See id.* § 1231(a)(2)(A). Here, as noted above, Petitioner was taken into custody by ICE on August 20, 2025. The 90-day removal period, therefore, expired as of November 18, 2025.

After the 90-day removal period has expired, a noncitizen may continue to be detained. *See id.* § 1231(a)(6). Moreover, the Supreme Court has held that after expiration of the 90-day removal period, the Government may continue to detain the noncitizen "for a presumptively reasonable period" of time, which the Supreme Court concluded equaled six months. *See Zadvydas v. Davis*, 533 U.S. 678, 701 (2001). Following that six-month period, "once [an] alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Id.*

Here, because Petitioner has just entered the six-month presumptively reasonable period of detention approved by the Supreme Court in *Zadvydas*, Petitioner cannot raise a plausible Fifth Amendment due process challenge to his detention at this time. The Court, therefore, will deny Petitioner's amended § 2241 petition. That denial, however, will be without prejudice to

Petitioner's right to file a new § 2241 petition challenging his continued detention should Petitioner's detention continue past the presumptively reasonable six-month period set forth in *Zadvydas*.[1]

## Conclusion

For the reasons discussed above, the Court will enter an order and judgment denying as moot the parties' motion for a joint status conference (ECF No. 23) and denying Petitioner's amended petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 (ECF No. 10).[2]

Dated:   November 24, 2025                        /s/ Paul L. Maloney
                                                  Paul L. Maloney
                                                  United States District Judge

---

[1] The Court notes that the Supreme Court recently held that § 1231(a)(6) does not require the "Government to offer detained noncitizens bond hearings after six months of detention in which the Government bears the burden of proving by clear and convincing evidence that a noncitizen poses a flight risk or a danger to the community." *See Johnson v. Arteaga-Martinez*, 596 U.S. 573, 576 (2002). The Court, however, did not reach Arteaga-Martinez's constitutional or *Zadvydas* claims, concluding that such claims were not properly before the Court. *See id.* at 583–84.

[2] In § 2241 cases involving immigration detainees, the Court need not address whether to grant a certificate of appealability. *See Ojo v. I.N.S.*, 106 F.3d 680, 681 (5th Cir. 1997).